**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELISA CORNELL-TROTTO, ELEANOR DEMARCO, DAMON DIROMA, GERARD DUNNE, DENISE FERRARO-MONTELEONE, ROBIN FITZPATRICK, JENNY KUTNER, GINAMARIE LASALLA, FRANK MARCOVITZ, and FRANK NATTRASS, | Case No. 22cv00285 |
| Plaintiffs, | |
| -against- | **NORTHROP GRUMMAN CORPORATION'S AND NORTHROP GRUMMAN SYSTEMS CORPORATION'S NOTICE OF REMOVAL** |
| NORTHROP GRUMMAN CORPORATION and NORTHROP GRUMMAN SYSTEMS CORPORATION | |
| Defendants. | |

**TO THE HONORABLE JUDGES AND CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK:**

PLEASE TAKE NOTICE that defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation (collectively, "Northrop Grumman") hereby remove to this Court *Cornell-Trotto et al. v. Northrop Grumman*, Index No. 615895/2021 ("*Cornell-Trotto*") currently pending before the Supreme Court of the State of New York, Nassau County, pursuant to 28 U.S.C. §§ 1332, 1441, 1442, 1446, and 1453, and respectfully state as follows:

**I.    INTRODUCTION**

1.    *Cornell-Trotto* is nearly identical to eight lawsuits brought by the same plaintiffs' counsel against Northrop Grumman that are all pending in this Court: *Romano v. Northrop Grumman*, No. 2:16-cv-05760-GRB-SLT ("*Romano*") (removed to federal court on October 14, 2016); *Ackerman v. Northrop Grumman*, No. 2:18-cv-04397-GRB-SLT ("*Ackerman*") (removed to federal court on August 2, 2018); *Cornett v. Northrop Grumman*, No. 2:18-cv-06453-GRB-ARL ("*Cornett*") (filed in the E.D.N.Y. on November 13, 2018; Napoli Shkolnik PLLC substituted for Rigano LLC as plaintiffs' counsel on August 6, 2020); *Ackerson v. Northrop*

*Grumman*, No. 2:19-cv-00942-GRB-SLT ("*Ackerson*") (removed to federal court on February 15, 2019); *Ball v. Northrop Grumman*, No. 2:19-cv-04381-GRB-SLT ("*Ball*") (removed to federal court on July 30, 2019); *Cammarata v. Northrop Grumman*, No. 20-cv-00511-GRB-AKT ("*Cammarata*") (removed to federal court on January 29, 2020); *Auer v. Northrop Grumman*, No. 2:21-cv-00415-GRB-SLT ("*Auer*") (removed to federal court on January 25, 2021); and *Betancourt v. Northrop Grumman*, No. 2:21-cv-04426-GRB-ARL ("*Betancourt*") (removed to federal court on August 12, 2021) (collectively, the "*Romano* Consolidated Actions").[1]

2.      The very same claims asserted in *Cornell-Trotto* are already being litigated in this Court.  The plaintiffs in *Cornell-Trotto* purport to be members of the *Romano* Consolidated Actions' putative classes.  Further, the *Cornell-Trotto* plaintiffs assert claims that wholly overlap with the *Romano* Consolidated Actions' class claims, and are represented by the same counsel as the putative classes in the *Romano* Consolidated Actions.

3.      As the *Cornell-Trotto* complaint acknowledges, *Cornell-Trotto* asserts "the same causes of action" against Northrop Grumman as are asserted in *Romano*, which has been pending in this Court for more than four years and which is currently in the class discovery phase.  (*See* Compl. ¶¶ 16-18 (describing *Cornell-Trotto*'s relation to *Romano*).)

4.      The *Cornell-Trotto* complaint is also a virtual copy of the other individual *Romano* Consolidated Actions, which were deemed related to *Romano* because of the factual overlap in allegations and relief sought.  (*See Ackerman*, No. 2:18-cv-04397, August 30, 2018 Order Reassigning Case; *Ackerson*, No. 2:19-cv-00942, June 20, 2019 Order Reassigning Case;

---

[1]  Northrop Grumman voluntarily accepted service of a copy of the *Cornell-Trotto* complaint on December 27, 2021.  A copy of the *Cornell-Trotto* complaint is included within **Exhibit A** ("Compl.").

*Ball*, No. 2:19-cv-04381, August 1, 2019 Order Reassigning Case; *Cammarata*, No. 20-cv-00511, January 31, 2020 Order Reassigning Case; *Auer*, No. 2:21-cv-00415, February 8, 2021 Order Reassigning Case.)  These cases were then consolidated for discovery on February 10, 2020.  (*See Romano*, 16-cv-05760, February 10, 2020 Order Reassigning Case.)  *Cornett* was added to the *Romano* Consolidated Actions on March 2, 2020.  (*See Cornett*, 2:18-cv-06453, March 2, 2020 Order Reassigning Case.)  *Auer* was added to the *Romano* Consolidated Actions on February 8, 2021.  (*See Auer*, No. 2:21-cv-00415, February 8, 2021 Order Reassigning Case.) *Betancourt* was added to the *Romano* Consolidated Actions on August 12, 2021.  (*See Betancourt*, No. 2:21-cv-04426, August 12, 2021 Order Reassigning Case.)

5.      The parties overlap among the eight individual cases.  Northrop Grumman Corporation and Northrop Grumman Systems Corporation are named as defendants in all eight actions.

6.      The *Cornell-Trotto* complaint requests the same relief sought in the *Romano* Consolidated Actions.

7.      A substantial saving of judicial resources—including guarding against the risk of conflicting decisions—is likely to result from assigning *Cornell-Trotto* to the Honorable Judge Gary R. Brown and the Honorable Magistrate Judge Steven Tiscione, who currently preside over the *Romano* Consolidated Actions.  In accordance with Local Rule 50.3.1(d), Northrop Grumman has met and conferred with Plaintiffs who agree that this case is related to the *Romano* Consolidated Actions, and Northrop Grumman will file an appropriate letter application with the Clerk of the Court for a determination of relatedness.

8.      Plaintiffs' state court filings suggest a strategy to try and force Northrop Grumman to litigate *identical claims* on multiple fronts and is not the first time Plaintiffs'

3

counsel have engaged in forum shopping.  *See Romano v. Northrop Grumman Corp.*, No. CV 16-5760 (DRH), 2017 WL 6459458, at *5 (E.D.N.Y. Dec. 15, 2017) (plaintiffs' procedural tactics "g[ave] rise to a strong suggestion of forum shopping").  It should not be permitted.  As described below, the multiple bases for federal jurisdiction—including diversity, the federal officer removal statute, and the Class Action Fairness Act—compel the conclusion that the *Cornell-Trotto* action belongs in federal court.

## II.    BACKGROUND

9.    Each of the plaintiffs asserts personal injury and property damage claims, purportedly relating to the alleged release of hazardous substances occurring on an "area formerly known as the Grumman Aerospace-Bethpage Facility Site, including the Northrop Grumman – Bethpage Facility, the Naval Weapons Industrial Reserve Plant – Bethpage ('NWIRP'), and the Grumman Steel Los Site," and an adjacent parcel of land that today is the Bethpage Community Park. (Compl. ¶¶ 2–4.)  For ease of reference, this Notice of Removal shall refer to this area, including the property once owned by the U.S. Navy on which NWIRP was located, as the "Navy/Grumman Site." (*See* Compl. ¶ 4.)  Plaintiffs generally allege that substances released at the Navy/Grumman Site (primarily trichloroethylene ("TCE") and its breakdown products) have migrated from groundwater plumes hundreds of feet below the surface up to their properties, that they were exposed to these substances at levels that could have caused them injury, and that they were injured by that alleged exposure.

10.    Beginning in the 1940s, Northrop Grumman and its predecessor Grumman Corporation ran government-owned, contractor-operated plants at a manufacturing facility in Bethpage, New York.  (Compl. ¶¶ 5–7, 191.)  During World War II, the company produced thousands of combat aircraft for the U.S. Navy that were instrumental in winning the war in the Pacific.  (Compl. ¶ 7.)  The company continued to produce state-of-the-art military aircraft for

the Navy through the Korean War and Cold War, and also designed and built the Apollo lunar module, which landed Neil Armstrong and other astronauts on the moon.  (Compl. ¶ 192.)  In carrying out these activities, Northrop Grumman acted in accordance with Navy and other government agency contracts and directions, and complied with industry and regulatory standards.

11.     In 1983, the New York State Department of Environmental Conservation ("NYSDEC") listed the Navy/Grumman Site in the Registry of Inactive Hazardous Waste Disposal Sites.  (Compl. ¶ 238.)  For decades, Northrop Grumman has worked closely with NYSDEC, the New York State Department of Health ("NYSDOH"), the Navy, and other federal, state, and local regulatory agencies to address environmental conditions relating to the Navy/Grumman Site.  (Compl. ¶¶ 238–255.)  As part of a comprehensive response to those environmental conditions, Northrop Grumman has been doing its part of the remediation, including having entered into consent orders with NYSDEC, fully implementing its obligations under those orders, and continuing to conduct investigation and remediation activities under NYSDEC's oversight.  (Compl. ¶¶ 232, 247, 256–257.)  NYSDEC has concluded that Northrop Grumman's extensive efforts protect human health and the environment, and comply with federal, state, and local requirements.  And no plaintiff in the eight cases related to *Cornell-Trotto* has produced any evidence to the contrary:  the results of soil and soil vapor testing performed by the putative class representatives in *Romano* on their own properties reveal *no detections* of TCE or its breakdown products—the primary constituent hazardous substances in the plumes.

12.     In June 2021, as part of its annual report under the Water Infrastructure Improvements for the Nation Act (the "WIIN Act"), the Navy reported to Congress for the fifth

ny-2316796

time that remediation efforts underway in Bethpage, in which the Navy actively participates, are effective, in compliance with federal and state law, remain "protective of human health and the environment," and that drinking water in the Bethpage area remains safe to drink.  The Navy as well as NYSDEC records of decision have all concluded that "treated water is in compliance with all current Maximum Contaminant Levels as per NYSDOH Part 5, Subpart 5-1 regulations that apply to Public Water Systems" and "the community is not being damaged by consuming water from public water suppliers."  (N.Y. Dep't of Environmental Conservation Amended Record of Decision, Northrop Grumman Bethpage Facility, Operable Unit No. 02 & 03, Site Nos. 130003A & 130003B (December 2019) at 23, A-13.)  The Bethpage Water District ("BWD") has also extensively documented investigation and remediation of water quality among its wells, and repeatedly reaffirmed that the water is safe to drink.

13.     Just as in the *Romano* Consolidated Actions, the *Cornell-Trotto* plaintiffs: (a) assert personal injury and property damage claims allegedly caused by releases of hazardous substances in the area surrounding the Navy/Grumman Site due to Northrop Grumman's manufacturing operations performed under "significant" contracts with and at the direction of the U.S. Navy  (*see, e.g.*, Compl. ¶¶ 7–8); and (b) claim that their alleged injuries resulted from the allegedly improper remediation that Northrop Grumman and the Navy have been performing under NYSDEC's oversight and approval.  (*See, e.g.*, Compl. ¶¶ 321–322.)

14.     Plaintiffs assert causes of action against Northrop Grumman for negligence, common law strict liability, private nuisance, and trespass.  (*See* Compl. ¶¶ 331–391.)  These are the same causes of action asserted in the *Romano* Consolidated Actions.  (*See* Compl. ¶¶ 16–18.)

15.     The *Cornell-Trotto* complaint seeks damages for at least 10 plaintiffs.  While the *Cornell-Trotto* complaint is silent on the specific amount of damages the plaintiffs seek, "a

6

defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  As explained further below, without conceding any merit to Plaintiffs' allegations or causes of action, the amount in controversy satisfies the $75,000 jurisdictional threshold under 28 U.S.C. § 1332(a) and the $5,000,000 jurisdictional threshold under § 1332(d).

16.     Accordingly, Northrop Grumman hereby removes *Cornell-Trotto* to this Court under 28 U.S.C. §§ 1332 and 1441(a), 1442(a)(1), and 1453.

## III.   REMOVAL IS PROPER PURSUANT TO 28 U.S.C. §§ 1332(a)(1) AND 1441(a).

17.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different States and in which the amount in controversy exceeds $75,000, exclusive of costs and interest.

### A.     Diversity of Citizenship

18.     Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation are corporations organized under the laws of the State of Delaware with their principal places of business in Falls Church, Virginia.  (Compl. ¶¶ 119, 121.)

19.     The plaintiffs in this action are completely diverse from Northrop Grumman.

20.     Plaintiff Elisa Cornell-Trotto, is a resident of Mastic, New York.  (Compl. ¶ 33.)

21.     Plaintiff Eleanor DeMarco, is a resident of Massapequa Park, New York. (Compl. ¶ 42.)

22.     Plaintiff Damon DiRoma is a resident of New Albany, Ohio.  (Compl. ¶ 51.)

23.     Plaintiff Gerard Dunne is a resident of Rego Park, New York.  (Compl. ¶ 60.)

24.     Plaintiff Denise Ferraro-Monteleone is a resident of Bethpage, New York. (Compl. ¶ 69.)

25.     Plaintiff Robin Fitzpatrick, individually is a resident of Durham, North Carolina. (Compl. ¶ 77.)

26.     Plaintiff Jenny Kutner, individually, is a resident of Huntington, New York. (Compl. ¶ 86.)

27.     Plaintiff GinaMarie LaSalla is a resident of Bethpage, New York.  (Compl. ¶ 95.)

28.     Plaintiff Frank Marcovitz is a resident of Plainview, New York.  (Compl. ¶ 103.)

29.     Plaintiff Frank Nattrass is a resident of Bethpage, New York.  (Compl. ¶ 111.)

30.     Accordingly, because Plaintiffs and Northrop Grumman are citizens of different States, this case meets the diversity requirements of 28 U.S.C. § 1332(a)(1).

**B.     Amount in Controversy**

31.     Although Northrop Grumman denies all of Plaintiffs' claims, the amount in controversy satisfies the jurisdictional threshold for removal.  Each plaintiff seeks a comprehensive list of damages including compensatory damages for the costs of past and future medical expenses, compensation for alleged physical injuries and mental anguish, lost income, alleged devaluation of property and costs of property repair or restoration, as well as an unspecified amount of punitive damages.  (Compl. ¶¶ 350, 357, 374, 375, 390, 392, 395.)  While Plaintiffs have not specified a claimed amount, the damages alleged in *Romano*—which, as the *Cornell-Trotto* complaint acknowledges, asserts "the same causes of action" against Northrop Grumman on behalf of a putative class that encompasses *Cornell-Trotto* Plaintiffs—sought many multiples of the threshold amount.  (*See* Compl. ¶¶ 16–18; Third Amended Complaint at pp. 79–80, *Romano v. Northrop Grumman*, No. 2:16-cv-05760, May 4, 2018 (ECF No. 34) (prayer for relief).)

32.     Accordingly, Northrop Grumman plausibly can allege that Plaintiffs' request for monetary damages exceeds the $75,000 amount-in-controversy requirement of 28 U.S.C.

§ 1332(a).  *See Dart Cherokee Basin Operating Co.*, *LLC*, 135 S. Ct. at 554 ("notice of removal

need include only a plausible allegation").

## IV.     REMOVAL IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1442(a)(1).

33.     This Court also has jurisdiction over *Cornell-Trotto* pursuant to 28 U.S.C.

§ 1442(a)(1), the federal-officer removal statute.  To remove under § 1442(a)(1), the removing

party must allege in its removal notice that: (1) it is a "person" within the meaning of the federal

officer removal statute; (2) it was acting under the direction of a federal officer; (3) the suit is for

or relates to any act performed "under color of [federal] office"; and (4) it can raise a "colorable"

federal defense.  *See, e.g.*, *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 317

(E.D.N.Y. 2014) (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008)).

Northrop Grumman satisfies each of these elements.

### A.     Northrop Grumman Is a "Person."

34.     "The Second Circuit has previously held that corporate entities like [Northrop

Grumman] are 'person[s]' under § 1442."  *Gordon*, 990 F. Supp. 2d at 317 (citing *In re Methyl

Tertiary Butyl Esther Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)).

### B.     Northrop Grumman Was "Acting Under" the Direction of a Federal Officer.

35.     "The words 'acting under' are to be interpreted broadly, and the statute as a whole

must be liberally construed."  *Isaacson*, 517 F.3d at 136 (citing *Watson v. Philip Morris Cos.

Inc.*, 551 U.S. 142, 147 (2007)).

36.     An entity "acts under" a federal officer when it "assists, or helps carry out, the

duties or tasks of the federal superior."  *Id.* at 137 (citations, alterations, & quotations omitted).

A private contractor such as Northrop Grumman thus "acts under" a federal officer when it

"help[s] the Government to produce an item that it needs."  *Id.* (citation omitted).  Indeed, "[t]he

assistance that private contractors provide federal officers goes beyond simple compliance with

the law and helps officers fulfill other basic governmental tasks . . . [such as] providing the Government with a product that it used to help conduct a war." *Id.* (citation omitted); *see also Depascale v. Sylvania Elec. Prods., Inc.*, 584 F. Supp. 2d 522, 526 (E.D.N.Y. 2008) (same).

37.     Here, Plaintiffs allege that Northrop Grumman's operations at the Navy/Grumman Site were performed at the U.S. Navy's direction to build "airplane[s], weapons and satellite[s]" through Northrop Grumman's many "significant U.S. Department of Defense contracts." (Compl. ¶ 7.) Northrop Grumman's activities at the Navy/Grumman Site to assist the U.S. Navy to manufacture needed products thus satisfies the "acting under" prong of the federal officer removal statute. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) ("Here, [the defendant contractor] worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete.").

**C.     Plaintiffs Seek to Hold Northrop Grumman Liable for Actions Taken "Under Color of Federal Office."**

38.     To meet the "under color" prong, private contractors such as Northrop Grumman "must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government. [Courts] credit Defendants' theory of the case when determining whether a causal connection exists." *Isaacson*, 517 F.3d at 137 (citing *Jefferson Cty. v. Acker*, 527 U.S. 423, 432 (1999)). "This has been referred to as a causation requirement, requiring a showing that the case arises out of the acts done under federal authority." *Depascale*, 584 F. Supp. 2d at 526.

39.     "The hurdle erected by this requirement is quite low . . . ." *Isaacson*, 517 F.3d at 137. In fact, in 2011, Congress amended § 1442(a)(1) to cover actions "for *or relating to* any act

10

under color of [federal] office," adding the words "or relating to."  Removal Clarification Act of 2011, Pub. L. No. 112–51, 125 Stat. 545.  This new language "broaden[ed] the universe of acts" that enable federal removal, H.R. Rep. 112–17, at 6 (2011), 2011 U.S.C.C.A.N. 420, 425, such that there need be only "'a *connection or association* between the act in question and the federal office.'" *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 813 (3d Cir. 2016) (citing *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F. 3d 457, 471 (3d Cir. 2015)).  This amendment reinforced the policy favoring resolution in federal court of claims involving federal interests.  *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.").

40.    Here there is sufficient connection or association between Plaintiffs' allegations and the federal government, because Plaintiffs seek to hold Northrop Grumman liable for contamination allegedly resulting from Northrop Grumman's actions taken at the direction of the U.S. Navy.  (*See, e.g.*, Compl. ¶¶ 5, 7–8 ("During several decades while it operated at the Site, Grumman, an airplane, weapons and satellite manufacturer with significant U.S. Department of Defense contracts, generated, stored, and disposed of toxic contaminants and manufacturing byproducts . . . . Grumman's practices resulted in extensive pollution at the Site and contaminated off-Site soils, air, groundwater and drinking water supplies in the area, causing Plaintiffs' injuries.").)

41.    Navy-approved specifications controlled Grumman's manufacturing processes, and unilaterally imposed requirements for the use of TCE and other industrial chemicals.  The Navy also exercised control over facilities Grumman used in production at Bethpage, including waste treatment infrastructure.  Indeed, the Navy itself owned many of the Bethpage facilities

11

and prohibited Grumman from altering them without Navy approval.  The Navy could, and did, veto Grumman's proposals for expanding waste treatment facilities at Bethpage.  And the Navy directed and oversaw some of Grumman's environmental remediation efforts at Bethpage, pursuant to Navy direction issued under one or more federal contracts.

42.     Plaintiffs' allegations regarding contamination at the Navy/Grumman Site, therefore, satisfy the "under color" prong.  *See, e.g.*, *Isaacson*, 517 F.3d at 138 ("The action that Plaintiffs challenge, the production of dioxin, naturally would have occurred during the performance of these government-specified duties.  And even if Plaintiffs were to prove that the dioxin contamination occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the contamination.  Indeed, whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer.").

### D.     Northrop Grumman Asserts a "Colorable Federal Defense."

43.     "Courts have imposed few limitations on what qualifies as a colorable federal defense."  *Id*.  A colorable federal defense is one based in federal law, arising from the defendant's compliance with a federal officer.  *See Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).  The defense need not be ultimately meritorious, only "colorable."  *See, e.g.*, *Willingham*, 395 U.S. at 406–07 (a party need only have a "colorable [federal] defense" and "need not win [the] case before [the party] can have it removed"); *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.") (citation omitted).

44.     Plaintiffs allege that their injuries were caused as a result of Northrop Grumman's contractually mandated activities performed at the U.S. Navy's direction.  (*See* Compl. ¶¶ 7–8.)

Northrop Grumman may thus assert the government contractor defense as originally set forth in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988).  *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 88 (2d Cir. 2008) (government contractor defense "protects government contractors from the specter of liability when the operation of state tort law would significantly conflict with the government's contracting interest").

45.     The Second Circuit has held that, in circumstances such as these where the claimed injuries are alleged to have resulted from actions undertaken pursuant to a defense department contract, the government contractor defense satisfies the "colorable" prong of the federal officer removal statute.  *See Isaacson*, 517 F.3d at 139 ("The government contractor defense, which is a creature of federal common law and serves to protect the interests of the Government rather than the contractor defendant is 'defensive' and 'federal.'  Moreover, as asserted by Defendants in this case, the defense clearly arose out of Defendants' duty pursuant to their contractual relationship with the Federal Government.  And as found by the district court, Defendants' assertions satisfy the particular requirements of the defense.") (citations, alterations, quotations omitted).

46.     Moreover, Northrop Grumman may assert immunity under § 707 of the Defense Production Act of 1950 ("DPA").[2]  *See* 50 U.S.C. § 2061 *et seq*.  Section 707 of the DPA immunizes defense contractors from liabilities stemming from the performance of contracts for the Department of Defense.  *See, e.g.*, *Ryan v. Dow Chem. Co*., 781 F. Supp. 934, 945 (E.D.N.Y. 1992).  In pertinent part, the DPA states that "[n]o person shall be held liable for damages or

---

[2] The DPA expired by its own terms in 1990, but still immunizes defense contractors for alleged liability stemming from qualifying "rated orders" with the Department of Defense.  *See, e.g.*, *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*, No. Civ. A. H-15-0754, 2016 WL 1259518, at *9, 14 (S.D. Tex. Mar. 31, 2016), *vacated on other grounds*, 853 F.3d 173 (5th Cir. 2017).

13

penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this chapter . . . ."  50 U.S.C. § 4557.

47.     As stated above, Plaintiffs allege that their injuries were caused as a result of Northrop Grumman's contractually mandated activities performed at the U.S. Navy's direction. (*See* Compl. ¶¶ 7–8.)  In fact, at least some of these contracts with the U.S. Navy were "rated orders" issued under the DPA.  Thus, for any liability stemming from these contracts, Northrop Grumman has immunity under § 707 of the DPA.  A court in this district has previously found that § 707 of the DPA satisfies the "colorable" prong of the federal officer removal statute.  *See Ryan*, 781 F. Supp. at 945 ("The defendants make out a colorable claim to the protection of section 707.").

48.     Further, Plaintiffs' claims also directly implicate as a colorable federal defense Northrop Grumman's qualified immunity as a government contractor.  Under this doctrine, contractors can be immune from suits that challenge their actions performed pursuant to a federal government contract.  *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672–74 (2016); *Yearsley v. W.A. Ross Const. Co*., 309 U.S. 18, 20–21 (1940); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 205–07 (5th Cir. 2009); *Mangold v. Analytic Servs., Inc*., 77 F.3d 1442, 1447–48 (4th Cir. 1996).  In *Yearsley*, the Supreme Court held that a government contractor could not be held liable for property damages caused by work supervised by the Army Corps of Engineers because the work "was all authorized and directed" by the Government and "there is no liability on the part of the contractor for executing [the Government's] will."  309 U.S. at 20–21.

49.     The Supreme Court reaffirmed the continued vitality of *Yearsley* in *Campbell-Ewald* in 2016.  Therein, the Supreme Court confirmed that government contractors have qualified immunity from suit, absent a showing that they violated clearly established federal

requirements or directions.  *See also Filarsky v. Delia*, 132 S. Ct. 1657, 1667–68 (2012) (a

private contractor retained by the government to carry out its work is entitled to share the

government's immunity from suit).  The Fifth Circuit in *Bean Dredging*, citing *Yearsley*, has

held that contractors could not be held liable for alleged environmental damages caused by their

dredging activities performed pursuant to federal government contracts.  *Bean Dredging*, 589

F.3d at 205–07.  Similarly, in *Lamb v. Martin Marietta Energy Sys., Inc.*, the court applied

derivative sovereign immunity to a government contractor that was alleged to have contaminated

groundwater through its operation of a government-owned plant, holding that strict liability

claims against the contractor—like those Plaintiffs assert against Northrop Grumman—would

"thwart the government's retained immunity" and were barred under the Federal Tort Claims

Act.  835 F. Supp. 959, 971 (W.D. Ky. 1993).

50.     Here, Northrop Grumman is immune from liability because the alleged acts

giving rise to Plaintiffs' claims were performed pursuant to valid federal contracts and at the

direction of the United States.  Plaintiffs have not alleged that Northrop Grumman failed to

comply with any explicit, clearly established federal directives.  This is a classic example of a

contractor performing work in accordance with a federal government contract "authorized and

directed" by the United States.  *See Yearsley*, 309 U.S. at 20–21; *see also Kuwait Pearls*, 2016

WL 1259518, at *11 (denying plaintiffs' motion to remand because, among other reasons,

defendant "satisfied the third element for federal officer removal, assertion of colorable federal

defenses, in its factual allegations supporting derivative sovereign immunity").

51.     Because Northrop Grumman satisfies each of the four elements necessary to

support removal under 28 U.S.C. § 1442(a)(1), removal to this Court is appropriate.  *See, e.g.*,

*Depascale*, 584 F. Supp. 2d at 528 (denying motion to remand a case removed on federal officer

grounds where the plaintiffs alleged that they were exposed to various chemicals and solvents discharged by the defendants to ground and water as a result of processes employed by the defendants during the manufacturing of fuel rods for the federal government).

## V.   REMOVAL BASED UPON THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. §§ 1332(d) and 1453.

52.   Separately, this Court also has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  As detailed below, this case is (1) a proposed class action within the meaning of CAFA, in which (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (3) "the number of members of all proposed plaintiff classes in the aggregate is [not] less than 100," and (4) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."  *See* 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6).

53.   CAFA defines a "class action" to include any "mass action." *Id*. § 1332(d)(11)(a). A "mass action" is any civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id*. § 1332(d)(11)(B)(i).

54.   Congress, when it passed CAFA, emphasized that a complaint may be removed even when the pleading is not denominated as a class action. *See* S. Rep. No. 109-14, p. 35 (2005).  Section 1332(d)(1)(B)'s definition of a "class action" must be "interpreted liberally," and "lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." *Id.*  In other words, because CAFA is intended to prevent parties from "gam[ing] the procedural rules," *id*. at 4, the court must look to the substance of the complaint and not only at its label.

**A.      This case is a "mass action" under 28 U.S.C. § 1332(d)(11).**

55.      The *Cornell-Trotto* complaint was filed in New York State Court approximately five months after the *Betancourt* complaint was filed.  The *Betancourt* complaint was filed in New York State Court approximately six months after the *Auer* complaint was filed.  The *Auer* complaint was filed in New York State Court less than a year after the *Cammarata* complaint was filed.  *Cammarata* was filed just over six months after *Ball* was filed, *Ball* was filed within six months of *Ackerson*, and *Ackerson* within six months of *Ackerman* and *Cornett*.  All eight lawsuits were modeled closely upon the complaint in *Romano*.  The *Romano*, *Ackerman*, *Ackerson*, *Ball*, *Cammarata*, *Cornett*, *Auer, Betancourt* and *Cornell-Trotto* suits all involve similar personal injury and property damage claims, which arise from the same events in the same geographic area, which are founded upon similar theories of causation and harm.  Northrop Grumman Corporation and Northrop Grumman Systems Corporation are named as defendants in all eight actions.  There are 26 plaintiffs in *Romano*, 70 in *Ackerman*, 50 in *Ackerson*, 16 in *Ball*, 22 in *Cammarata*, 3 in *Cornett*, 25 in *Auer*, 13 in *Betancourt* and 10 in *Cornell-Trotto*, for a total of 235 plaintiffs (including four duplicates outlined below).

56.      Plaintiffs' own affirmative actions indicate their intent to try all actions jointly. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013) ("[P]laintiffs can propose a joint trial, either by naming 100 or more plaintiffs in a single complaint or by their litigation conduct at any time prior to defendants' removal of their action to federal court.").   The plaintiffs are all represented by the same law firm, which sent the same solicitation in 2015 to all plaintiffs to join litigation arising from alleged contamination in Bethpage.  (Napoli Shkolnik PLLC, "Harmful Levels of Toxic Chemicals in Bethpage Yard Soil," dated July 1, 2015 (available at https://www.napolilaw.com/article/harmful-levels-of-toxic-chemicals-in-bethpage-yard-soil/).)  Plaintiffs then made an affirmative, voluntary, and intentional decision to file

coordinated, near-identical suits in New York State Court.  *See Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1048 (9th Cir. 2015) ("A proposal for purposes of CAFA's mass action jurisdiction, even an implicit proposal, is a 'voluntary and affirmative act,' and an 'intentional act.'") (citation omitted).  In fact, three of the same plaintiffs—Mr. Glenn Falino, Mr. Daniel Gallante, and Ms. Jackie Lieberman—are named in both the *Romano* and *Ackerman* actions. Plaintiffs also named Ms. Renee Gannon in both *Ackerson* and *Ackerman*.  These claims appear to be duplicative.  At least one other plaintiff in *Ball* shares a surname with a *Romano* plaintiff, one plaintiff in *Cammarata* shares a surname with a *Ball* plaintiff, and other plaintiffs in *Ackerman* share surnames and addresses with *Romano* plaintiffs, suggesting that they are related and have resided in the same household, and that there may be additional factual overlap that will have to be explored.

57.     *Cornell-Trotto* and the *Romano* Consolidated Actions are more than simply related: they appear to propose to try the very same claims.  *Romano* purports to assert class claims on behalf of "all individuals who are current or former residents and/or current property owners in or around Bethpage, New York, and nearby communities located within the Town of Oyster Bay and the Town of Hempstead in Nassau County" Bethpage, which would include all plaintiffs in the *Romano* Consolidated Actions and in *Cornell-Trotto*, who assert the same claims proposed to be tried on behalf of the classes there, and are represented by the very same putative class counsel.

58.     Plaintiffs could not have intended to try the same claims by the same plaintiffs multiple times across separate trials.  Thus, by filing nearly identical, coordinated complaints in New York State Court, one after the other, Plaintiffs have proposed to try the claims of more

18

than 200 plaintiffs jointly, and this case meets the definition of a mass action removable under

CAFA.

**B.      CAFA's numerosity requirement is satisfied.**

59.     This is not an action in which the "number of members of all proposed plaintiff

classes in the aggregate is less than 100," 28 U.S.C. § 1332(d)(5)(B), because there are 225

named plaintiffs in the mass action described above.

**C.      CAFA's minimal diversity requirement is satisfied.**

60.     CAFA applies to all proposed class actions where the parties are "minimally

diverse," meaning that "any member of a class of plaintiffs is a citizen of a State different from

any defendant."  28 U.S.C. § 1332(d)(2)(A).  The minimal-diversity requirement is met here

because Northrop Grumman is diverse from all Plaintiffs.

**D.      CAFA's amount-in-controversy requirement is satisfied.**

61.     For jurisdiction to exist under CAFA, "the matter in controversy [must] exceed[]

the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  "In

any class action, the claims of the individual class members shall be aggregated to determine

whether the matter in controversy" meets the $5,000,000 threshold.  *Id.* § 1332(d)(6).

62.     This threshold is satisfied, as outlined above (*supra* paragraphs 46–47), because

each plaintiff seeks a comprehensive list of damages including compensatory damages for the

costs of past and future medical expenses, compensation for alleged physical injuries and mental

anguish, lost income, alleged devaluation of property and costs of property repair or restoration,

as well as an unspecified amount of punitive damages.  Even though Plaintiffs have not specified

a claimed amount, in *Romano*—which, as the *Cornell-Trotto* complaint acknowledges, asserts

"the same causes of action" against Northrop Grumman—plaintiffs seek many multiples of the

jurisdictional threshold.  Accordingly, Northrop Grumman plausibly alleges that Plaintiffs'
request for monetary damages exceeds the $5,000,000 amount-in-controversy requirement.

63.     Because Northrop Grumman has satisfied each of CAFA's jurisdictional
requirements, the *Cornell-Trotto* complaint is due to be removed to this Court under CAFA, as
well.

## VI.  NORTHROP GRUMMAN SATISFIES THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

64.     Removal is timely under 28 U.S.C. § 1446(b), because Northrop Grumman is
removing *Cornell-Trotto* within 30 days of being served with the *Cornell-Trotto* complaint.

65.     Venue is proper under 28 U.S.C. § 1442(a), because this Court is the United
States District Court for the district and division embracing the place where *Cornell-Trotto* was
pending.

66.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders in
*Cornell-Trotto*, which include the summons and complaint, are attached hereto as **Exhibit A**.

67.     A copy of the written notice required by 28 U.S.C. § 1446(d) is attached as
**Exhibit B**.  This notice will be promptly provided to the Clerk of the United States District Court
for the Eastern District of New York and served on Plaintiffs.

     **WHEREFORE**, Northrop Grumman respectfully requests that the above-titled action now pending against it in the United States District Court for the Eastern District of New York, be removed to this Court.

Dated:  January 18, 2022

Mark A. Miller (*of counsel*)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639
mmiller@hollingsworthllp.com

*/s/ Grant J. Esposito*
Grant J. Esposito
Katie L. Viggiani
Robert J. Baehr
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
gesposito@mofo.com
kviggiani@mofo.com
rbaehr@mofo.com

*Attorneys for Defendants Northrop Grumman*
*Corporation and Northrop Grumman Systems*
*Corporation*

## CERTIFICATE OF SERVICE

I certify that, on January 18, 2022, a true and accurate copy of the foregoing document

was served upon counsel of record by email to:

> Paul J. Napoli
> Lilia Factor
> Napoli Shkolnik PLLC
> 400 Broadhollow Road, Suite 305
> Melville, New York 11747
> pnapoli@NSPRlaw.com
> lfactor@napolilaw.com
>
> *Attorneys for Plaintiffs*

> /s/ Grant J. Esposito
> _____
> Grant J. Esposito
> Katie L. Viggiani
> Robert J. Baehr
> MORRISON & FOERSTER LLP
> 250 West 55th Street
> New York, New York 10019
> Telephone: (212) 468-800
> Facsimile: (212) 468-7900
> gesposito@mofo.com
> kviggiani@mofo.com
> rbaehr@mofo.com
>
> *Attorneys for Defendants Northrop*
> *Grumman Corporation and Northrop*
> *Grumman Systems Corporation*